UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Angelia Marie Newell,
      Claimant

      v.                              Case No. 12-cv-480-SM
                                      Opinion No. 2014 DNH 026

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration,
      Defendant

### O R D E R

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), claimant, Angelia Newell, moves to reverse or vacate the Commissioner's decision denying her application for Supplemental Security Income Benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383c (the "Act").  The Commissioner objects and moves for an order affirming her decision.

For the reasons discussed below, claimant's motion is denied, and the Commissioner's motion is granted.

### Factual Background

I.    Procedural History.

In 2008, claimant filed an application for Supplemental Security Income ("SSI"), alleging that she had been unable to

work since June 25, 2000.  She subsequently amended that date to February 26, 2008.  That application was denied and claimant requested a hearing before an Administrative Law Judge ("ALJ").  In October of 2009, the ALJ held a hearing and, approximately one month later, issued a decision in which he concluded that claimant was not disabled under the Act.  The Decision Review Board selected claimant's application for review and, on February 12, 2010, remanded the case to the ALJ for a new hearing and decision.

The ALJ held a second hearing in May of 2011, at which claimant, her attorney, and an impartial vocational expert all appeared.  Approximately two months later, the ALJ issued a new decision, again finding that claimant was not disabled within the meaning of the Act.  The Appeals Council denied claimant's request for review and the ALJ's adverse decision became the final decision of the Commissioner, subject to judicial review.  Subsequently, claimant filed a timely action in this court, asserting that the ALJ's decision is not supported by substantial evidence and seeking a judicial determination that she is disabled within the meaning of the Act.  Claimant then filed a "Motion for Order Reversing Decision of the Commissioner" (document no. 10).  In response, the Commissioner filed a "Motion

for Order Affirming the Decision of the Commissioner" (document
no. 13).  Those motions are pending.

II.  <u>Stipulated Facts</u>.

Pursuant to this court's Local Rule 9.1, the parties have
submitted a statement of stipulated facts which, because it is
part of the court's record (document no. <u>15</u>), need not be
recounted in this opinion.  Those facts relevant to the
disposition of this matter are discussed as appropriate.


**Standard of Review**

I.  "<u>Substantial Evidence</u>" and <u>Deferential Review</u>.

Pursuant to 42 U.S.C. § 405(g), the court is empowered "to
enter, upon the pleadings and transcript of the record, a
judgment affirming, modifying, or reversing the decision of the
Commissioner of Social Security, with or without remanding the
cause for a rehearing."  Factual findings and credibility
determinations made by the Commissioner are conclusive if
supported by substantial evidence.  <u>See</u> 42 U.S.C. §§ 405(g),
1383(c)(3).  <u>See also</u> <u>Irlanda Ortiz v. Secretary of Health &</u>
<u>Human Services</u>, 955 F.2d 765, 769 (1st Cir. 1991).  Substantial
evidence is "such relevant evidence as a reasonable mind might
accept as adequate to support a conclusion."  <u>Consolidated Edison</u>

Co. v. NLRB, 305 U.S. 197, 229 (1938).  It is something less than a preponderance of the evidence, so the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.  Consolo v. Federal Maritime Comm'n., 383 U.S. 607, 620 (1966).  See also Richardson v. Perales, 402 U.S. 389, 401 (1971).

This court's review of the ALJ's decision is, therefore, both limited and deferential.  The court is not empowered to consider claimant's application de novo, nor may it undertake an independent assessment of whether she is disabled under the Act. Rather, the court's inquiry is "limited to determining whether the ALJ deployed the correct legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999).  Provided the ALJ's findings are properly supported by substantial evidence, the court must sustain those findings even when there may also be substantial evidence supporting the contrary position.  See, e.g., Tsarelka v. Secretary of Health & Human Services, 842 F.2d 529, 535 (1st Cir. 1988); Rodriguez v. Secretary of Health & Human Services, 647 F.2d 218, 222 (1st Cir. 1981).

4

II.  <u>The Parties' Respective Burdens</u>.

An individual seeking SSI benefits is disabled under the Act if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3). The Act places a heavy initial burden on the claimant to establish the existence of a disabling impairment.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146-47 (1987); <u>Santiago v. Secretary of Health & Human Services</u>, 944 F.2d 1, 5 (1st Cir. 1991).  To satisfy that burden, the claimant must prove, by a preponderance of the evidence, that her impairment prevents her from performing her former type of work.  <u>See</u> <u>Gray v. Heckler</u>, 760 F.2d 369, 371 (1st Cir. 1985); <u>Paone v. Schweiker</u>, 530 F. Supp. 808, 810-11 (D. Mass. 1982).  If the claimant demonstrates an inability to perform her previous work, the burden shifts to the Commissioner to show that there are other jobs in the national economy that she can perform.  <u>See</u> <u>Vazquez v. Secretary of Health & Human Services</u>, 683 F.2d 1, 2 (1st Cir. 1982).  <u>See also</u> 20 C.F.R. § 416.912(f).

In assessing a disability claim, the Commissioner considers both objective and subjective factors, including: (1) objective medical facts; (2) the claimant's subjective claims of pain and disability, as supported by the testimony of the claimant or other witnesses; and (3) the claimant's educational background, age, and work experience.  See, e.g., Avery v. Secretary of Health & Human Services, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Secretary of Health & Human Services, 690 F.2d 5, 6 (1st Cir. 1982).  Ultimately, a claimant is disabled only if her:

> physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

With those principles in mind, the court reviews claimant's motion to reverse and the Commissioner's motion to affirm her decision.

**Background – The ALJ's Findings**

In concluding that claimant was not disabled within the meaning of the Act, the ALJ properly employed the mandatory five-step sequential evaluation process described in 20 C.F.R. § 416.920.  Accordingly, he first determined that claimant had not been engaged in substantial gainful employment since her alleged onset of disability: February 26, 2008.  Admin. Rec. at 10.[1]  Next, he concluded that claimant suffers from the following severe impairments: "morbid obesity; compression fractures T8 to T12; lordosis/scoliosis of the lumbar spine."  <u>Id</u>.  Nevertheless, he determined that those impairments, regardless of whether they were considered alone or in combination, did not meet or medically equal one of the impairments listed in Part 404, Subpart P, Appendix 1.  <u>Id</u>. at 16.

Although the ALJ devoted substantial attention to evidence concerning claimant's alleged hemiplegic migraines, he ultimately determined that "the conclusion that the claimant possibly has hemiplegic migraines is not supported by objective testing and

---

[1]    The ALJ's decision contains a minor typographical error, suggesting that the date of claimant's alleged onset of disability is February 28, 2008, rather than February 26, 2008.  That error is harmless and appears to stem from discussions between claimant's attorney and the ALJ during the October 2, 2009, hearing.  <u>See</u> Admin. Rec. at 84-85.

the physical examinations associated with the condition find that
the claimant's presentations are unreliable."  Admin. Rec. at 13-
14.  Accordingly, he concluded claimant's condition does not
constitute a "medically determinable impairment."  Id. at 13.
Nevertheless, he went on to conclude that even assuming claimant
does suffer from "a medically determinable impairment of
hemiplegic headache[s], the totality of the record establishes
that the condition is not severe" because "claimant's headaches
do not significantly limit her ability to perform basic work
activities."  Id. at 14.  As discussed below, claimant challenges
that finding.

   Next, the ALJ concluded that claimant retained the residual
functional capacity ("RFC") to perform the exertional demands of
a range of light work.[2]  In support of that conclusion, the ALJ

---

[2]     "RFC is what an individual can still do despite his or her
functional limitations.  RFC is an administrative assessment of
the extent to which an individual's medically determinable
impairment(s), including any related symptoms, such as pain, may
cause physical or mental limitations or restrictions that may
affect his or her capacity to do work-related physical and mental
activities.  Ordinarily, RFC is the individual's maximum
remaining ability to do sustained work activities in an ordinary
work setting on a regular and continuing basis, and the RFC
assessment must include a discussion of the individual's
abilities on that basis."  Social Security Ruling ("SSR"), 96-8p,
Policy Interpretation Ruling Titles II and XVI: Assessing
Residual Functional Capacity in Initial Claims, 1996 WL 374184 at
*2 (July 2, 1996) (citation omitted).

cited, among other things, the Medical Source Statement from claimant's treating orthopedist, Dr. Mark Geppert.  Dr. Geppert opined that claimant retains the ability to perform a range of full-time work, in a position that requires frequent sitting, and only occasional standing and/or walking.  Id. at 18.  See also Admin. Rec. at 1553.  The ALJ also relied upon the medical opinions offered by the non-examining medical consultant, Dr. Joseph Cataldo, who also opined that claimant retains the ability to perform a range of light work.  Id. at 19.  See also Id. at 1529-36.

Finally, the ALJ noted that claimant had no past relevant work history and considered whether there were any jobs in the national economy that she might perform.  Relying upon the testimony of a vocational expert, the ALJ concluded that, notwithstanding claimant's exertional and non-exertional limitations, she "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy."  Admin. Rec. at 24.  Accordingly, the ALJ concluded that claimant was not "disabled," as that term is defined in the Act, at any time since her alleged onset date.

**Discussion**

Claimant challenges the ALJ's decision on two grounds,
asserting that he erred by: (1) failing to recognize that her
hemiplegic migraines constitute a "severe impairment," and (2)
failing to properly consider the effect of her obesity on her
ability to perform physical activities.

I.   Claimant's Migraine Headaches.

"It is well established in this circuit 'that the Step 2
severity requirement is . . . to be a de minimus policy, designed
to do no more than screen out groundless claims.'"  Mohammad v.
Astrue, 2011 WL 1706116, at *7 (D.N.H. April 4, 2011) (quoting
McDonald v. Secretary of Health & Human Services, 795 F.2d 1118,
1124 (1st Cir. 1986)).  Given the relatively low threshold
established by the step two inquiry, claimant says the ALJ erred
when he concluded that her alleged hemiplegic migraines do not
constitute a "severe impairment."  Whether the ALJ did, in fact,
err at step two is a close call - a point on which reasonable
minds could certainly disagree.  But, even assuming he did err,
it is plain from the record that his error was harmless.

At step two of the sequential inquiry, the ALJ supportably
concluded that claimant's hemiplegic migraines either fail to

10

rise to the level of a medically determinable impairment and/or cause no more than minimal limitations on claimant's ability to perform basic work activities.  The administrative record in this case - including claimant's voluminous medical records - spans more than 2,500 pages.  And, the ALJ thoroughly discussed claimant's medical history and cited substantial record evidence in support of his conclusions about her migraines.  See Admin. Rec. at 11-14 (noting, for example, Dr. Dirksmeier's opinion that claimant's hemiplegic symptoms were "completely unreliable" based upon claimant's inconsistent effort during testing (Id. at 444); Dr. Lallana's observation that "exam findings are not consistent with true weakness" (Id. at 1044); and the existence of MRI and CT scans that reveal no structural pathology that might explain claimant's hemiplegic symptoms).  The ALJ also noted the several references in the record to the likelihood that claimant's limitations stem from a somatoform disorder, claimant's repeated reports to medical providers of having suffered a "stroke" when no evidence of such a stroke exists, and references in treatment records to her "strong history of Munchausen syndrome in the past."  See, e.g., Id. at 1057-58.

Importantly, however, even assuming the ALJ did err at step two, that error was harmless.  As this court (DiClerico, J.) has noted:

> [A]n error at Step Two will result in reversible error only if the ALJ concluded the decision at Step Two, finding no severe impairment.  If instead the ALJ continued through the remaining steps and considered all of the claimant's impairments in making those additional findings, any error at Step Two is harmless. In contrast, a decision will be reversed if an ALJ errs by omitting a severe impairment at Step Two and then also fails to consider the effects of that impairment in the following steps, leaving the decision without substantial support in the record.

Syms v. Astrue, 2011 WL 4017870 at *1, 2011 DNH 138 at 3 (D.N.H. Sept. 8, 2011) (citations and footnote omitted).  See also Montore v. Astrue, 2012 WL 3583346 at *4, 2012 DNH 131 at 10 (D.N.H. Aug. 20, 2012) ("A Step 2 error is harmless if the ALJ continued through the remaining steps and considered all of the claimant's impairments.") (citation and internal punctuation omitted).

Here, it is plain that the ALJ thoroughly considered claimant's non-severe impairments - including her migraine headaches - and discussed each at length in reaching the conclusion that none adversely affected her residual functional capacity.  See, e.g., Admin. Rec. at 18 ("While the undersigned,

upon assessing the claimant's residual functional capacity, did take into consideration her non-severe impairments (left shoulder impairment, headaches, and adjustment disorder), as noted above, the undersigned finds no evidence supportive of a need for further reduction of the above-noted functional capacity."). See generally 20 C.F.R. § 416.945(a)(2).

Claimant's first assertion of error is, therefore, without merit. Even if the ALJ did err at step two of the sequential analysis by failing to recognize her hemiplegic migraine headaches as a "severe" impairment, that error was harmless because he took those headaches into account when he subsequently determined her RFC. And, that RFC determination is supported by substantial evidence in the record, including expert medical opinions, objective medical findings and results of diagnostic imaging, claimant's activities of daily living, and the nature and course of her treatment. See Admin. Rec. at 17-22. Finally, in determining claimant's RFC, the ALJ gave adequate explanation for his decision to discount those medical opinions in the record that suggested claimant's headaches might impair her ability to engage in substantial gainful activity. See, e.g., Id. at 19 (discussing the reasons he afforded little weight to the opinions of Dr. Alison Baker).

13

II.  <u>Claimant's Obesity</u>.

Next, claimant asserts that the ALJ erred by failing to properly consider her obesity when determining her ability to perform physical activities.  As she points out, an ALJ is required to make an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment."  SSR 02-1P, <u>Titles II and XVI: Evaluation of Obesity</u>, 2002 WL 34686281 at *6 (Sept. 12, 2002).  But, there is certainly adequate evidence in the record to support the conclusion that the ALJ met that obligation.

First, at step two, the ALJ concluded that claimant's obesity constitutes a severe impairment, Admin. Rec. at 10, and noted that her pain symptoms are "exacerbated by her morbid obesity," <u>id</u>. at 11.  Next, the ALJ took claimant's obesity into account when determining her RFC, noting again that her obesity "certainly aggravates her symptoms," <u>id</u>. at 18, and recognizing that her obesity "credibly limit[s] her ability to stand and/or walk."  Accordingly, he concluded that claimant was capable of only "occasional standing and/or walking."  <u>Id</u>. at 18.

Moreover, in making his RFC determination, the ALJ also relied upon the professional medical opinions of claimant's treating orthopedist and the non-examining medical consultant - both of whom took claimant's obesity into account in assessing her ability to perform work-related functions.  Admin. Rec. at 18-19.  See also Id. at 1553-54 (Dr. Geppert's opinion that claimant can lift up to 20 pounds occasionally, sit for up to eight hours per day, stand for up to two hours per day, and walk for up to one hour per day); Id. at 1529-36 (Dr. Cataldo's similar opinions).  As various courts (including this one) have noted, even when an ALJ fails to specifically discuss a claimant's obesity (not the case here), it is sufficient if he or she relies upon the opinions of medical experts who have taken the claimant's obesity into consideration.  See, e.g., Drake v. Astrue, 443 Fed. Appx. 653, 657 (2d Cir. 2011) ("[W]e agree with the District Court that the ALJ implicitly factored [claimant's] obesity into his RFC determination by relying on medical reports that repeatedly noted [claimant's] obesity and provided an overall assessment of her work-related limitations."); Skarbek v. Barnhart, 105 Fed. Appx. 836, 840 (7th Cir. 2004) ("[T]he ALJ adopted the limitations suggested by the specialists and reviewing doctors, who were aware of [claimant's] obesity.  Thus, although the ALJ did not explicitly consider [claimant's]

15

obesity, it was factored indirectly into the ALJ's decision as part of the doctors' opinions."). See also Rutherford v. Barnhart, 399 F.3d 546, 552-53 (3d Cir. 2005); Benitez v. Astrue, 2011 WL 6778534 at *4 (D.Ma., Dec. 20, 2011); Young v. Astrue, 2011 WL 4340896 at *11-12, 2011 DNH 140 (D.N.H. Sept. 15, 2011).

Here, not only did the ALJ specifically address claimant's obesity (and found it constitutes a "severe impairment"), he also relied upon the expert opinions of medical professionals who had taken her obesity into account in assessing her ability to perform work-related activities.

Finally, as the Commission points out, claimant has failed to identify any additional physical limitations imposed by her obesity that might call the ALJ's RFC determination into question. See 20 C.F.R. § 416.912(c) ("You must provide evidence . . . showing how your impairment(s) affects your functioning during the time you say that you are disabled."). See also O'Dell v. Astrue, 736 F. Supp. 2d 378, 390 (D.N.H. 2010) ("It was up to [claimant] to specifically allege how his obesity affected his ability to work during the period in question, and he failed to meet that burden.").

**Conclusion**

Having carefully reviewed the administrative record and the arguments advanced by both the Commissioner and claimant, the court concludes that there is substantial evidence in the record to support the ALJ's determination that claimant was not disabled at any time prior to the date of his decision.  Even if the ALJ erred at step two by failing to recognize claimant's alleged hemiplegic migraines as "severe," that error was harmless since he went on to consider the effect of those headaches on her residual functional capacity.  And, the record reveals that the ALJ gave more than adequate consideration to claimant's obesity and its impact on her RFC.

As noted above, the question before this court is not whether it believes claimant is disabled and entitled to benefits.  Instead, the question presented is far more narrow: whether there is substantial evidence in the record to support the ALJ's decision.  There is.

Claimant's lengthy medical history and the treatment she has received from numerous medical care providers are well documented in her voluminous medical records.  And, that record certainly contains substantial evidence suggesting that she has difficulty

17

performing basic work activities.  But, the existence of such evidence is not sufficient to undermine the ALJ's lengthy, thorough, and well-documented adverse disability determination, which is also supported by substantial evidence.  When substantial evidence can be marshaled from the record to support either the claimant's position or the Commissioner's decision, this court is obligated to affirm the Commissioner's finding of no disability.  See, e.g., Tsarelka, 842 F.2d at 535 ("[W]e must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."); Rodriguez, 647 F.2d at 222 ("We must uphold the [Commissioner's] findings in this case if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.").  See also Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995) ("We must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.").

For the foregoing reasons, as well as those set forth in the Commissioner's memorandum, the court concludes that the ALJ's adverse disability decision was supported by substantial evidence, despite the existence of evidence in the record that could support a different conclusion.  Claimant's motion to

reverse the decision of the Commissioner (document no. 10) is, therefore, denied, and the Commissioner's motion to affirm her decision (document no. 13) is granted.  The Clerk of the Court shall enter judgment in accordance with this order and close the case.

        **SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

February 10, 2014

cc:  D. Lance Tillinghast, Esq.
     Robert J. Rabuck, Esq.